UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIA DEL RIO LOW,

                Plaintiff,

       v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

Case No. C17-0394 JCC

**ORDER REVERSING DENIAL OF REQUEST TO WITHDRAW RETIREMENT INSURANCE BENEFITS APPLICATION**

Plaintiff, Maria del Rio Low, seeks review of the Commissioner's decision denying her request to withdraw an application for retirement insurance benefits. Plaintiff contends that the Social Security Administration ("SSA") issued an unconstitutional rule change, which the ALJ applied to bar Plaintiff's withdrawal request, that the ALJ erred by finding that Plaintiff was not misinformed when she filed for benefits, and that she should have been allowed to withdraw her application regardless of the rule change because she was misinformed by the SSA. Dkt. 13. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter to permit Plaintiff to withdraw her application for retirement insurance benefits.

**I.     BACKGROUND**

Plaintiff is currently 71 years old. *See* Tr. 17. On September 25, 2009, at the age of 62, Plaintiff submitted an application for retirement insurance benefits to the SSA. Tr. 17-20.

ORDER REVERSING DENIAL OF REQUEST
TO WITHDRAW RETIREMENT
INSURANCE BENEFITS APPLICATION - 1

Plaintiff reported that this application was submitted over the phone after speaking with an SSA employee. *See* Tr. 56. In the application, Plaintiff reported that she was previously married for approximately 15 years, and that the marriage ended by divorce in 1986. Tr. 17. The application included several other boilerplate statements. First, it stated that Plaintiff was applying "for all insurance benefits for which I am eligible under Title II (federal old-age, survivors, and disability insurance) . . . of the Social Security Act . . . ." *Id.* Second, it stated that Plaintiff "want[ed] benefits beginning with the earliest possible month based on my earnings." Tr. 18.

On October 2, 2009, the SSA issued Plaintiff a notice of award informing her that she was entitled to retirement benefits beginning in September 2009, and that the first payment would issue on October 8, 2009. Tr. 21.

On May 31, 2012, Plaintiff filed a request for withdrawal of her application for retirement benefits. Tr. 35. Plaintiff later explained that she wanted to withdraw her application so she could apply for divorced spouse benefits starting at age 66, her full retirement age, and then switch to receiving benefits on her own account at age 70. Tr. 134-35. By taking this route, Plaintiff would avoid the 25 percent reduction in monthly benefits that occurred due to her receiving early retirement benefits starting at age 62. Tr. 135. She would also receive an eight percent per year increase in the monthly benefits she would receive on her own account by taking the divorced spouse benefit at age 66 and delaying receipt of retirement benefits on her own account until age 70. Tr. 135.

On September 21, 2012, the SSA notified Plaintiff that it could not approve her withdrawal request because it was received more than 12 months after she was eligible for and began receiving benefits. Tr. 40-42. The SSA denied Plaintiff's request for reconsideration on December 6, 2013. Tr. 48-51.

On August 28, 2014, an administrative law judge ("ALJ") held a hearing to consider Plaintiff's withdrawal request. Tr. 145. Plaintiff argued that she should be allowed to withdraw her application because at the time she filed the application, SSA regulations allowed a claimant to withdraw their applications at any time. Tr. 79-81. On December 8, 2010, over a year after Plaintiff began receiving benefits, the SSA had enacted a new regulation imposing a 12-month time limit on withdrawal of benefits applications. *See* 20 C.F.R. § 404.640(b)(4). Plaintiff argued that this was an unlawfully retroactive regulation. Tr. 79-81.

Plaintiff also argued that she should be allowed to withdraw her application because she had been misinformed by the SSA when she filed her application. Tr. 153. Despite reporting that she was divorced, Plaintiff alleged that the SSA employee she spoke to on the phone during the application process never told her she was eligible for divorced spouse benefits. *Id.* As explained above, Plaintiff argued that if she had known she was eligible for divorced spouse benefits, she would not have filed for retirement benefits starting at age 62, and instead would have waited until age 66 to file for divorced spouse benefits. *See* Tr. 155. Once she reached age 70, she would then file for retirement benefits based on her own earnings history. *See* Tr. 155-56. Plaintiff admitted, however, that her claim that she was misinformed was based entirely on her own statements, and that she had no documentary evidence on the issue. Tr. 151.

## II.    THE ALJ'S DECISION

On December 22, 2014, the ALJ issued a decision denying Plaintiff's request to withdraw her retirement benefits application. Tr. 12. The ALJ determined that he had no authority to decide whether the SSA's rule imposing a 12-month time limit on withdrawal of an application was permissible. Tr. 14. Accordingly, he applied that 12-month time limit to find that Plaintiff was precluded from withdrawing her application. Tr. 15.

The ALJ nonetheless analyzed Plaintiff's argument that she should be allowed to withdraw her application because she had been misinformed by the SSA at the time she filed it. *See* Tr. 13-16. The ALJ first determined that Plaintiff would not have been eligible to receive dual benefits—meaning her retirement benefits on her own account and divorced spouse benefits—at the time she filed her application. Tr. 14. The ALJ then determined that Plaintiff could not have been misinformed by the SSA at the time of her application because she was not eligible for divorced spouse benefits at that time, and thus there was no additional benefit about which the SSA was obligated to inform her. Tr. 15.

The ALJ further held that, regardless of eligibility, Plaintiff had not proven that she was misinformed. Tr. 16. Under 20 C.F.R. § 404.633(d)(2), the SSA "will not find that [it] gave [a claimant] misinformation . . . based solely on [the claimant's] statements." The ALJ stated that the only evidence Plaintiff produced was her statements, and, therefore, she could not establish that she was misinformed and entitled to relief. Tr. 16.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 4. Plaintiff subsequently filed for review in this Court. Dkt. 5. After the parties completed their briefing, the Court requested and the parties submitted supplemental briefing on Plaintiff's retroactivity claim and her entitlement to divorced spouse benefits at full retirement age if she had not previously applied for benefits. Dkt. 23, 30, 31.

### III. DISCUSSION

Individuals may receive retirement benefits if they are fully insured, have reached age 62, and file an application for such benefits. 42 U.S.C. § 402(a). Individuals who begin receiving benefits at age 62 receive reduced retirements benefits, sometimes referred to as "early retirement" benefits. *See* 20 C.F.R. § 404.410. Individuals who wait until they reach full

retirement age—which ranges between ages 65-67 depending on birthdate—to begin collecting benefits are entitled to unreduced benefits. *See* 20 C.F.R. § 404.409. Individuals in Plaintiff's age bracket can further increase their retirement benefits by delaying receipt of those benefits until age 70. *See* 20 C.F.R. § 404.313.

Certain individuals may also be entitled to receive benefits as a divorced spouse, provided (1) they were validly married to an insured person, (2) the marriage lasted for at least 10 years; (3) they have been divorced from the insured person for at least two years; (4) they are not married; (5) they are age 62 or older; (6) they apply for divorced spouse benefits; and (7) they are not entitled to retirement or disability benefits on their own account that are equal to or larger than half of the insured former spouse's primary retirement benefits. *See* 20 C.F.R. §§ 404.331 & 404.333.

Individuals who file for retirement benefits prior to reaching full retirement age are deemed to apply for all possible benefits. *See* Soc. Sec. Admin., Program Operations Manual Sys. ("POMS") GN 00204.020.[1] However, once an individual reaches full retirement age, she can restrict her application to only one benefit. POMS GN 00204.020(D)(1)(b). An individual who would otherwise be ineligible for divorced spouse benefits if she applied for her own retirement benefits could therefore become eligible for divorced spouse benefits by waiting until full retirement age to apply for benefits, and then restricting her application to only divorced spouse benefits. The individual could then wait until age 70 to apply for retirement benefits on her own account, at which point those benefits would have reached their maximum monthly amount. *See* 20 C.F.R. § 404.313.

---

[1] This section of the POMS has been revised since Plaintiff filed her application for benefits. However, those revisions do not impact the outcome of this case, and are therefore not further discussed.

ORDER REVERSING DENIAL OF REQUEST
TO WITHDRAW RETIREMENT
INSURANCE BENEFITS APPLICATION - 5

1  Plaintiff filed her application for retirement benefits at age 62.  *See* Tr. 17-20.  Because
2  she had not reached full retirement age, she could not restrict her application, and was therefore
3  deemed to have filed for all benefits.  *See* POMS GN 00204.020; *see also* Tr. 17.  As a result,
4  Plaintiff was not eligible for divorced spouse benefits because her benefits on her own account
5  exceeded half of her former spouse's primary retirement benefits.  *See* Tr. 132.

6  Plaintiff contends (1) that the SSA violated her due process rights by revising its rules to
7  retroactively impose a 12-month time limit on withdrawal of an application for benefits; (2) that
8  the ALJ erred in finding that she was not misinformed at the time she submitted her application;
9  and (3) that the ALJ erred in denying her request to withdraw her application based on her
10 having been misinformed.  *See* Dkt. 13 at 8-9.  Because the Court finds that the SSA's 12-month
11 time limit as imposed in this case was impermissibly retroactive, the Court need not reach
12 Plaintiff's last two arguments.

13 As an initial matter, the SSA challenges the Court's authority to review Plaintiff's due
14 process challenge to 20 C.F.R. § 404.640, arguing that 42 U.S.C. § 405(g) restricts judicial
15 review only to the ALJ's final decision.  Dkt. 20 at 6.  The SSA is wrong.  *See McNary v.*
16 *Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991); *Nat'l Mining Ass'n v. Dep't of Labor*, 292
17 F.3d 849, 856 (D.C. Cir. 2002).

18 Plaintiff's primary argument is that the SSA promulgated an impermissibly retroactive
19 regulation when it imposed a 12-month time limit on withdrawal of applications for retirement
20 benefits, and that the SSA deprived her of due process in doing so.  At the time Plaintiff applied
21 for and was awarded benefits, SSA regulations permitted her to withdraw her application at any
22 time.  *See* 75 Fed. Reg. 76,256, 76,257 (Dec. 8, 2010).  On December 8, 2010, over a year after
23 Plaintiff began receiving benefits, the SSA enacted a regulation stating that applications could

not be withdrawn if the request to withdraw was filed more than 12 months after the first month a claimant began receiving benefits. *See id.*; 20 C.F.R. 404.640(b)(4)(i). Because Plaintiff started receiving benefits in October 2009, this new regulation meant that she immediately lost any ability to withdraw her application.

Analysis of an allegedly retroactive regulation requires several steps, all of which derive from the principle that retroactivity is not favored in the law. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). First, the court looks to whether Congress has given the agency promulgating the regulation authority to make retroactive rules. *Id.* An agency's authority to promulgate regulations is strictly limited to the power it is given by Congress. *Id.* Thus, unless the agency has been given authority by Congress to make retroactive regulations, it cannot do so. *Id.*

This first step is easily resolved. Congress generally has not granted the SSA retroactive rulemaking authority. *See Frost v. Barnhart*, 314 F.3d 359, 371 (9th Cir. 2002); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 645 (6th Cir. 2006) (citing *Bowen*, 488 U.S. at 213 & n.3). The SSA has pointed to no specific statutory language that would allow for retroactive rulemaking here. *See* Dkt. 20 & 30. The Court accordingly concludes that the SSA did not have authority to enact retroactive regulations in the current context.

Second, the Court looks at whether the language of the regulation at issue is such that it must be considered retroactive. Administrative regulations will not be construed to have retroactive effect unless the language of the regulations requires this result. *Bowen*, 488 U.S. at 208; *see Frost*, 314 F.3d at 371 ("'Regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations requires this result.'") (quoting *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1083 (9th Cir. 2002)).

ORDER REVERSING DENIAL OF REQUEST
TO WITHDRAW RETIREMENT
INSURANCE BENEFITS APPLICATION - 7

A regulation is retroactive when it "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). A regulation is not retroactive when it applies only to future events or clarifies legal principles that were already in effect, and does not change substantive standards of entitlement. *See Regions Hosp. v. Shalala*, 522 U.S. 448, 456 (1998) (holding that regulation was not impermissibly retroactive because it called for the "correct" application of existing reimbursement principles, "not the application of any new reimbursement principles"). In analyzing retroactivity, "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Landgraf*, 511 U.S. at 270.

The SSA's 12-month time limit is impermissibly retroactive as applied to Plaintiff. It did not merely clarify existing legal principles, but altered the consequences of Plaintiff's prior actions. When she began receiving retirement benefits, Plaintiff could withdraw her application at any time. Plaintiff could decide to withdraw her application and repay the early retirement benefits she had received, preserving her eligibility to later receive unreduced retirement benefits, or to seek divorced spouse benefits. But once the SSA promulgated its 12-month withdrawal time limit, Plaintiff immediately lost the ability to withdraw her application. *See* 20 C.F.R. 404.640(b)(4)(i). She had no notice and no opportunity to conform her actions based on her settled expectations of the law. The SSA's 12-month time limit was therefore impermissibly retroactive as applied to Plaintiff.

**IV. CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** to permit Plaintiff to withdraw her application for retirement insurance benefits.

DATED this 13th day of August 2018.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER REVERSING DENIAL OF REQUEST
TO WITHDRAW RETIREMENT
INSURANCE BENEFITS APPLICATION - 9